IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| BRIAN EDWARD LEATH § | |
|     Petitioner § | |
| § | |
| VS. § | C.A. NO. C-06-276 |
| § | |
| NATHANIEL QUARTERMAN, § | |
| DIRECTOR, TEXAS DEPARTMENT § | |
| OF CRIMINAL JUSTICE– § | |
| INSTITUTIONAL DIVISION, § | |
|     Respondent § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner is an inmate in the Texas Department of Criminal Justice - Institutional Division, ("TDCJ-ID"), and currently is incarcerated at the McConnell Unit in Beeville, Texas and the actions about which he complains occurred there.  Proceeding *pro se,* petitioner filed this habeas corpus petition pursuant to 28 U.S.C. § 2254 on June 7, 2006 (D.E. 1).[1]  Petitioner argues that his due process rights were violated when he was found guilty of disciplinary charges which were not supported by the evidence at the hearing or in the record.  Respondent filed a motion for summary judgment on August 30, 2006 (D.E. 11) to which petitioner responded on October 20, 2006 (D.E. 17).

---

[1] Petitioner executed and mailed his petition on June 7, 2006.  Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379 (1988).

## JURISDICTION

Petitioner was incarcerated at the McConnell Unit in Beeville, Texas at the time he filed his petition and this Court has jurisdiction over his case.  28 U.S.C. § 2241(d); Wadsworth v. Johnson, 235 F.3d 959 (5th Cir. 2000).

## BACKGROUND

Petitioner currently is serving a 20-year sentence for indecency with a child by contact  (D.E 1, Ex. A).  He does not complain about his holding conviction, but challenges the results of a disciplinary hearing.  In disciplinary case number 20060170024 petitioner was accused and found guilty of extorting 1 Royal Pacific coffee from offender Timothy Fisher on February 2, 2006, by coercion in the form of threat of violence, to include bodily injury (Disp. Hrg. Recs., D.E. 12, p. 1).

In the offense report, the charging officer, Sergeant Bill Lazenby, stated that on January 11, 2006 he was contacted by inmate Fisher who said he was the subject of extortion by petitioner Leath and another inmate, Artis Jones.  Fisher had previously been a member of the "Blood" gang but had ceased activity related to his gang membership. Petitioner and Jones knew that Fisher had withdrawn from gang activity and told Fisher he would have to pay them for protection with commissary or be assaulted (Disp. Hrg. Recs., D.E. 12, p. 2).

Fisher did not receive commissary money from his family and he feared that if he did not pay with commissary, he would be forced to pay with sexual favors.  Also, he did not want to have to fight other inmates because he did not want to incur disciplinary charges.

Lazenby and Fisher agreed that as part of the investigation of Fisher's claims, Fisher would deliver marked commissary to petitioner Leath (Disp. Hrg. Recs., D.E. 12, p. 3).

After a failed attempt on January 19, 2006 to deliver the commissary while being video-taped,[2] Fisher reported to Lazenby that petitioner had approached him on February 2, 2006 and asked for commissary. Lazenby arranged for Fisher to obtain marked commissary items, which he took to petitioner's cell. Petitioner refused some of the commissary items because he had not requested them. Fisher returned the items petitioner did not want to the commissary. The activity was recorded by a video camera and also witnessed by a picket officer, Darren Mayer, who had been briefed on the extortion operation (Disp. Hrg. Recs., D.E. 12, p. 3).

Two more officers, Gonzales and Moreno, went to petitioner's cell to take him into custody. Upon searching his cell they found the marked bag of coffee. One can of marked tuna was found on the run, directly in front of petitioner's cell (Disp. Hrg. Recs., D.E. 12, pp. 3-4).

In the offense report Lazenby also stated that Fisher had given him a "kite" or note which he had received from Artis Jones on February 1, 2006 and in which Jones said he had heard that Fisher was working with the law and if it were true, Fisher would be hurt (Disp.

---

[2]While on his way to deliver the marked commissary items in an area where the transaction would be video-taped, Fisher met petitioner in a hallway and gave petitioner the commissary items there. The transaction occurred in front of Sergeant Garza, who asked both offenders if they were trafficking or trading in front of him. Fisher told Garza that he had just been holding the items for petitioner for a few minutes. Later, Sergeant Garza recalled the incident, but could not identify or remember the offenders involved (Disp. Hrg. Recs., D.E. 12, p. 3).

Hrg. Recs., D.E. 12, pp. 4, 14). In addition, Lazenby noted that on December 29, 2005 a life endangerment document was initiated, which documented Fisher being assaulted by Jones and threatened by petitioner Leath. Lazenby said the earlier assault supported Fisher's allegations that he was going to have to pay further protection or be vulnerable to assaults (Disp. Hrg. Recs., D.E. 12, p. 4).

During the pre-hearing investigation and at the hearing the petitioner stated that he did not extort anybody for anything. He said that Fisher gave him the commissary items because he was renting some dice from him. Petitioner rents dice out for $2.00. Petitioner also pointed out that the tuna was not found in his cell but was on the run (Disp. Hrg. Recs., D.E. 12, pp. 29, 34). Petitioner also submitted several statements from inmates. Inmate Cornelius Robinson stated, "Leath didn't do it. Somebody was fucking with Fisher, but it wasn't Leath." (Disp. Hrg. Recs., D.E. 12, p. 30). Inmate McGlothin stated "Fisher came and put a bag of coffee in our house." Inmate Whitley stated said that Fisher was trying to get moved so he made up the story about extortion (Disp. Hrg. Recs., D.E. 12, p. 32). Inmate McBride said that Fisher told him that he wanted to be transferred and was going to make up a life endangerment claim. McBride also said Fisher told him that he was going to buy some dice for a bag of coffee and some other things and claim he was being extorted (Disp. Hrg. Recs., D.E. 12, p. 33). The charging officer testified to the same information that was in the offense report (Disp. Hrg. Recs., D.E. 12, p. 29).

Petitioner was found guilty based on the charging officer's report, witness testimony and the marked commissary items that were found in and by petitioner's cell (Disp. Hrg.

Recs., D.E. 12, p. 36). He was punished with a reprimand, the loss of 45 days of commissary and recreation privileges, a reduction in line class form S4 to L3 and the loss of 365 days of good time. (Disp. Hrg. Recs., D.E. 12, p. 36).

Petitioner filed a Step 1 grievance complaining about the results of the disciplinary hearing on March 6, 2006 and the warden responded that a preponderance of the credible evidence presented by the Safe Prisons office justified the finding of guilt and the punishment imposed (Disp. Grv. Recs. D.E. 1, pp. 3-4). Petitioner filed a Step 2 grievance on April 23, 2003 and received the same response from the assistant administrator for offender grievances (Disp. Grv. Recs., D.E. 12, pp. 1-2).

In his motion for summary judgment, respondent argues that petitioner is not entitled to relief because he received all the process he was due and because the evidence was sufficient to uphold the hearing officer's finding of guilt. Respondent conceded that petitioner exhausted his administrative remedies. Petitioner countered that he was prevented from presenting an adequate defense because he was not allowed to see the offense report prior to the hearing. He said that if he could have seen the report, he would have been able to provide evidence to contradict the offense report. More particularly, he would have presented evidence from inmate McBride that Fisher did not deliver any commissary items to petitioner on January 19, 2006 but instead returned to his housing area where he gambled with the commissary items he received.

In addition, petitioner argues there was no proof of ownership of the items that he allegedly "extorted" from Fisher. He also argues that the hearing officer did not consider all

the evidence he presented on his own behalf and that the reasons given for finding petitioner guilty were not sufficiently detailed to allow the petitioner to understand the basis of guilt. Petitioner submitted an unsworn declaration from inmate McBride where he stated that there is a TDCJ-ID policy by which 51 percent of an inmate's guilt is based on the charging officer's report, regardless of any information submitted by the inmate and that inmates are never allowed to see the charging officer's report (D.E. 17, Ex. P).

## APPLICABLE LAW

**A.  Due Process Rights**

In order to be granted a writ of habeas corpus, a petitioner must show that he is in custody in violation of the Constitution, laws or treaties of the United States.  In Sandin v. Conner, 515 U.S. 472, 483-484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995), the U.S. Supreme Court described the limited instances in which prison inmates can make out a claim that a liberty interest has been taken without due process.

> The time has come to return to the due process principles we believe were correctly established and applied in [Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963 (1974)] and [Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532 (1976)].  Following Wolff, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause.  But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Id.  (internal citations omitted).  The Supreme Court held in Sandin that confinement in disciplinary segregation for twenty-three hours and ten minutes per day "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty

interest." Sandin, 515 U.S. at 486, 115 S.Ct. at 2301. The Court focused on the nature of the liberty interest at issue, finding that conditions of disciplinary segregation did not differ significantly from conditions in administrative segregation and protective custody. Id.

### 1. Time Earning Status

To the extent petitioner is complaining about his reduction in Line Class, he fails to state a basis of relief. Generally a lower classification of line class limits an inmate's ability to earn good time credits, which could have an effect on the amount of time he is in custody. Even so, "such speculative, collateral consequences do not create constitutionally protected liberty interests." Luken v. Scott, 71 F.3d 192 (5th Cir. 1995)(citing Meachum v. Fano, 427 U.S. 215, 229, n. 8, 96 S.Ct. 2532, 2540, n. 8, 49 L.Ed.2d 451 (1976)), cert. denied sub nom. Luken v. Johnson, 116 S.Ct. 1690 (1996). "'Prisoners have no protectable property or liberty interest in custodial classifications.'" Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999)(citing Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998)). See also Malchi v. Thaler, 211 F.3d 959 (5th Cir. 2000)(holding that timing of inmate's release is too speculative to afford him a constitutionally cognizable claim to the right to a particular time-earning status, which right the Texas legislature has specifically denied creating). Accordingly, petitioner is not entitled to habeas corpus relief based on the change in his line class.

### 2. Loss of Good Time

In addition to the parole scheme in Texas, some inmates are entitled to early release under a mandatory supervision program in which a prisoner sentenced to the institutional division can serve the remainder of his term outside the prison, not on parole, but under the

supervision and control of the pardons and paroles division. Madison v. Parker, 104 F.3d 765, 768 (5th Cir. 1997) (citing TEX. CODE CRIM. P. ANN. art. 42.18 § 2(2)). Prisoners earn good time credits which are added to their actual days served in prison to calculate their release date. TEX. GOV'T CODE ANN. §508.147 (Vernon 2002).

The Fifth Circuit has determined that prior to September 1, 1996, the mandatory supervision program created a constitutional expectation of early release. Malchi v. Thaler, 211 F.3d 953, 957-958 (5th Cir. 2000). The mandatory supervision scheme was revised in 1998 and the language in the new section was designed to avoid creating a protected liberty interest. Hudson v. Johnson, 242 F.3d 534, 536, n. 1. However, despite the apparent intent of the legislature, the Fifth Circuit has not yet decided whether the loss of good time credits implicates due process concerns under the current statute, but has assumed that it does. Id. at 536. Also, the Texas Court of Criminal Appeals has held that the language of the statute does create a liberty interest in mandatory supervision. Ex Parte Geiken, 28 S.W.3d 553, 558 (Tex. Crim. App. 2000).

Petitioner in this case is eligible for release to mandatory supervision (D.E. 11, Ex. A, Commitment Inquiry). Accordingly, the loss of good time credits as the result of a disciplinary hearing implicates the higher levels of due process contemplated by the Supreme Court in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The inmate is entitled to the following process: (1) He must receive written notice of the charges; (2) He must be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or

correctional goals; (3) There must be a written statement by the fact finder as to the evidence relied on and reasons for the decision. Wolff, 418 U.S. at 564, 94 S.Ct. at 2979.

In this case, petitioner received notice of the charges against him (Disp. Hrg. Recs., D.E. 12, p. 1). He argues that he should have received a copy of the offense report, but there is no Constitutional requirement that he be given a copy of the report. Moreover, because offense reports might contain information that could put another inmate's safety at risk it is understandable why prison officials would not supply them to inmates charged with disciplinary infractions. "Prison officials must have the necessary discretion to keep the hearing within reasonable limits . . . As well as to limit access to other inmates to collect statements or to compile other documentary evidence." Wolff, 418 U.S. at 566, 94 S.Ct. at 2980.

Petitioner was allowed to submit written statements from inmate witnesses, all of whom stated that he did not extort commissary items from Fisher. Petitioner argues that if he had seen the offense report, he would have submitted a statement from McBride saying that Fisher had used some supposed "extorted" items to gamble with on an earlier occasion. However, petitioner did submit a statement from McBride who said Fisher had told him he was going to make up the extortion claim and showed him a pair of dice and said he was going to buy them for a bag of coffee. McBride clearly knew about the allegations and could have included all the information he had about Fisher at the time he submitted his written statement. Petitioner cannot show that his due process rights were violated either by

9

not receiving a copy of the offense report or by not being allowed to submit witness statements.

Finally, the hearing officer noted that she based her decision on the charging officer's report, witness testimony and the marked commissary items that were found in and by petitioner's cell. Petitioner claims that she should have described in more detail the basis of her decision, but given the fact that petitioner was at the hearing and heard the charging officer's testimony, it is unclear what else the hearing officer could have said. Nor has petitioner shown any prejudice he suffered by the hearing officer not giving more details regarding the basis of her decision.

For all of these reasons, petitioner has failed to make out a claim that his due process rights were violated during the disciplinary process. Accordingly, it is recommended that summary judgment be entered for respondent.

### 3. Sufficiency of the Evidence

Petitioner also complains that there was insubstantial evidence to support a finding of guilt. It is not the job of the courts to assess the weight of the evidence when reviewing a prison disciplinary hearing, but only to determine whether the guilty finding has support of some facts or any evidence at all. Hudson v. Johnson, 242 F.3d 534, 537 (5th Cir. 2001). In this case, the hearing officer relied upon the report of the charging officer, who also testified at the hearing. The report and testimony of the charging officer are some evidence of petitioner's guilt. Id. In addition, other officers submitted statements that corroborated the charging officer's version of events (Disp. Hrg. Recs., D.E. 12, pp. 42-48).

As long as a hearing officer's decision is supported by some evidence and the requirements of Wolff have been met, the decision cannot be disturbed on judicial review. "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent Mass. Corr. Institution v. Hill, 472 U.S. 445, 455-456, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985); Banuelos v. McFarland, 41 F.3d 232, 234 (5th Cir. 1995). In this case, statements from two corrections officers support the hearing officer's decision. Accordingly, petitioner's argument that the hearing officer's decision was not based on substantial evidence is not supported by the record.

**B.  Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under §

2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Slack v. Daniel, 529 U.S. 473, 484, 120 S.Ct. 1604, 146 L.Ed.2d 542 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327, 123 S.Ct. at 1034.

A slightly different standard applies when the claims are dismissed on procedural grounds. In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 120 S.Ct. at 1604, 529 U.S. at 484 (emphasis added).

In petitioner's case, it is recommended that his claims be dismissed on the merits. If the district court orders that petitioner's cause of action be dismissed, and petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because he has not made the necessary showing for issuance of a COA.

## RECOMMENDATION

Based on the foregoing, it is recommended that respondent's motion for summary judgment (D.E. 11) be granted and petitioner's cause of action for habeas corpus relief be

dismissed. It is further recommended that should petitioner seek a Certificate of Appealability, it be denied.

Respectfully submitted this 13th day of November, 2006.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Services Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).